USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/16/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULENE VALENTINE

                Plaintiff,

-against-

BRAIN & SPINE SURGEONS OF NEW YORK, P.C., SCOLIOSIS AND SPINE SURGERY P.C., KRISHNA SHARMA AND RUDOLPH TADDONIO, BOTH INDIVIDUALLY AS AIDERS AND ABETTORS,

                Defendants.

No. 17-cv-2275 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Julene Valentine commenced this action against Defendants Brain & Spine Surgeons of New York, P.C., Scoliosis and Spine Surgery P.C., and Doctors Krishna Sharma and Rudolph Taddonio, both individually as aiders an abettors alleging: (1) failure to accommodate in violation of the Americans with Disabilities Act; (2) discriminatory termination in violation of the American with Disabilities Act; (3) failure to accommodate under the New York State Human Rights Law; and (4) discriminatory termination under the New York State Human Rights Law. (*See* Amended Compl., ECF No. 13.) Before the Court are Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), or, in the alternative, partial conversion to a Motion for Summary Judgment. For the following reasons, Defendants' Motion to Dismiss is DENIED in part, and partially converted to a Motion for Summary Judgment.

1

## BACKGROUND

Plaintiff Julene Valentine ("Valentine") is a resident of White Plains, New York. (Amended Compl. ("AC") ¶ 2.) She began working for Defendant Scoliosis and Spine Surgery P.C. ("SSSX") on May 4, 1987 and was terminated on March 3, 2016. (*Id.*) SSSX was a small medical practice which consisted of at least two surgeons: Defendants Dr. Krishna Sharma ("Sharma") and Dr. Rudolph Taddonio ("Taddonio"), who are medical surgeons engaged in the business of spine surgery. (*Id.* ¶¶ 7, 12.) Defendant Taddonio originally hired Plaintiff as a medical transcriptionist for SSSX. (*Id.* ¶ 21.) Throughout her 29 year tenure at SSSX, Plaintiff was given increased responsibility and was promoted on multiple occasions. (*Id.* ¶¶ 22, 25, 28, 31.) Plaintiff was most recently promoted to Practice Manager in 2013. (*Id.* ¶ 31.)

In or about November 2015, Defendants Taddonio and Dr. Krishna Sharma ("Sharma") informed Plaintiff that the practice was merging with Defendant Brain & Spine Surgeons of New York, P.C. ("BSSNY"). (*Id.* ¶ 33.) Prior to the merger, Defendants BSSNY consisted of a team of neurosurgeons. (*Id.* ¶ 6.) At some point around the merger, Defendants Sharma and Taddonio became principals of the corporate Defendants. (*Id.* ¶ 13.)

The merger caused SSSX and BSSNY's practices to overlap. (*Id.* ¶ 35.)[1] SSSX began operating under BSSNY's Federal Tax ID number, both practices used the same office software program, all insurance and patients payments to SSSX would be inputted by BSSNY employees, and BSSNY provided the necessary "Explanation of Benefits" for SSSX's patients' review. (*Id.*

---

[1] Plaintiff's allegations sound in several theories of employer liability which, as she states in her Opposition, she believes will be narrowed after discovery. In the Complaint, Plaintiff claims that SSSX and BSSNY merged to form one medical practice (AC ¶ 8). Plaintiff also claims that while she was employed, the corporate Defendants operated as a single or joint employer and together employed for than fifteen (15) people. (AC ¶ 9.)

¶ 36.) Plaintiff further alleges that BSSNY became involved directly in SSSX's daily business decisions including maintenance of patient files, treatment of patients, and finances. (*Id.* ¶ 38.)

Following the merger, Plaintiff met with BSSNY's Business Manager, Denise Lewis ("Lewis"), to discuss SSSX's procedure for billing claims, insurance networks, and to discuss the roles of SSSX employees. (*Id.* ¶ 39.) Lewis then informed Plaintiff that SSSX would begin submitting office and surgical claims under the BSSNY Federal Tax ID number, and the information would be submitted by BSSNY employees. (*Id.* ¶ 40.) Plaintiff also began receiving emails from BSSNY administrator, Ken Tompkins, regarding X-Ray reimbursements. That information, Plaintiff asserts, assisted Tompkins in determining whether to buy a new digital X-Ray machine, or continue using the one in the SSSX office. (*Id.* ¶ 41.) Plaintiff asserts that BSSNY's office manager began implementing personnel decisions that affected SSX employees including reducing the hours of several SSSX employees. (*Id.* ¶¶ 43–44.)

In the Fall of 2015, Plaintiff began suffering from constant tiredness, lack of appetite, skin discoloration, trouble walking, shortness of breath, and dizziness. (*Id.* ¶ 46.) Based on Plaintiff's physical appearance, one of her co-workers, Sandy Solotaroff ("Solotaroff") informed Defendant Taddonio of Plaintiff's symptoms on two occasions. (*Id.* ¶¶ 47, 49.) On the first occasion Defendant Taddonio assured Solotaroff that Plaintiff was fine. (*Id.* ¶ 48.) On the second occasion, Defendant Taddonio assured Plaintiff's co-workers that he would make sure Plaintiff went to a doctor and that he would speak to her husband. (*Id.* ¶ 50.) He never did so. (*Id.* ¶ 51.) Throughout this episode, Plaintiff worked 10 to 12 hours per day. (*Id.* ¶ 52.)

Plaintiff's condition began deteriorating and by February 2016, she could only walk eight to ten steps at a time. (*Id.* ¶ 54.) On or about February 19, 2016, Plaintiff met with Dr. Aris Comninellis ("Comninellis") who, after running a series of tests, diagnosed Plaintiff with life

3

threatening anemia. (*Id.* ¶¶ 55–57.)[2] Plaintiff was hospitalized from about February 19, 2016 through February 21, 2016. (*Id.* ¶ 60.)

Defendant Sharma visited Plaintiff during her hospitalization and spoke about her condition, the treatment she was receiving, and how she felt. (*Id.* ¶ 61.) Comninellis informed Plaintiff on or about February 22, 2016 that she could not return to work until at least February 29, 2016. (*Id.* ¶ 63.) Plaintiff returned to work on or about February 29 and worked the whole day. (*Id.* ¶ 64.) Plaintiff informed Defendant Taddonio that she would have to miss work for a scheduled colonoscopy and endoscopy on a future date. (*See id.* ¶ 65.)

On March 3, 2016, Defendants Taddonio and Sharma called Plaintiff to inform her that she was being terminated. (*Id.* ¶ 67.) Defendant Taddonio informed two of Plaintiff's co-workers that Plaintiff was being let go because "he felt she was 'not doing her job up to her capability because she was ill.'" (*Id.* ¶ 68.) Defendant Taddonio also expressed to her co-workers that he thought Plaintiff may have a neurological problem. (*Id.* ¶ 69.)

## **STANDARD ON A MOTION TO DISMISS**

The relevant inquiry under Rule 12(b)(6) is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S.

---

[2] Plaintiff defines anemia as "a disorder that develops when there is not enough hemoglobin (red blood cells) in an individual's body. Hemoglobin are the cells that carry oxygen. If the hemoglobin is low or abnormal the body cannot get enough oxygen." (AC ¶ 58.)

at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## **DISCUSSION**

Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, asks the Court to convert part of the Motion to one for summary judgment. Defendant argues that the ADA does not apply because corporate Defendants do not employ more than fifteen (15) people under any theory, Plaintiff has not asserted sufficient facts showing that BSSNY violated the ADA, and Plaintiff failed to state a claim for failure to accommodate under the ADA. (*See generally* Mem. of Law in Supp. of Def. Mot. to Dismiss ("Def. Mot."), ECF No. 17.)[3]

The Americans with Disabilities Act "was enacted to 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing 42 U.S.C. § 12101(b)(1)). Most relevant to this case, Title I of the ADA proscribes discrimination against individuals with

---

[3]As Plaintiff notes, Defendants do not move to dismiss Plaintiff's claim for wrongful termination under the ADA or the New York State Human Rights Law. (Mem. of Law in Supp. of Pl. Opp. to Def. Motion to Dismiss the Compl. ("Pl. Opp") 1, ECF No. 21.)

disabilities in employment and hiring. *Id.* Where, as here, Plaintiff alleges that her employer failed to provide a reasonable accommodation for her disability, a Plaintiff must demonstrate that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Gomez v. New York City Police Department*, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (citing *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013)). In discrimination claims alleging failures to accommodate, the Plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment." *McMillan*, 711 F.3d at 126 (quotations and citations omitted). Plaintiff is generally required to inform her employer about her disability before the employer "has any obligation to accommodate the disability." *MacEntee v. IBM*, 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) (quotations and citations omitted).

A threshold issue in any ADA case is whether the Defendants are, in fact, Plaintiff's employer and whether they employed fifteen people or more for purposes of the statute. 42 U.S.C. § 12111(5)(A); *See McMillan*, 711 F.3d at 125 ("[t]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA . . .") (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)); *Christiansen v. Omnicom Group, Inc.*, 167 F. Supp. 3d 598, 608 (S.D.N.Y. 2016) ("An employer-employee relationship is a required element of an employment discrimination claim under the ADA"), *rev'd in part on other grounds by* 852 F.3d 195 (2d Cir. 2017). Given the dispositive nature of the fifteen-employee question in this case, the Court turns to that issue first.

## Applicability of the ADA and Conversion to Summary Judgment

A Plaintiff asserting an ADA claim must allege that their employer employs fifteen people or more. 42 U.S.C. § 12111(5)(A). "In counting the number of employees for purposes of the ADA's numerosity requirement, a court may aggregate employees of two or more entities." *Rizzo v. DF Land LLC*, 13 Civ. 8664 (AKH), 2014 WL 12560779, at *1 (S.D.N.Y. June 10, 2014) (citation omitted). Aggregation is appropriate when Plaintiff makes allegations buttressing either that the Defendant companies function as a single integrated enterprise or that they function as a joint employer. *Id.*

Under the single employer doctrine, Plaintiff must assert factual allegations supporting four factors to determine whether two entities will be regarded as a single employer subject to joint liability for employment-related acts: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (citations omitted); *Brown v. Daikin America Inc.*, 756 F.3d 219, 226 (2d Cir. 2014). Not one factor is determinative and all factors are not required. *Murray*, 74 F.3d at 404. The central concern of the single employer doctrine, however, is the control of labor relations. *Brown*, 756 F.3d at 227. "Thus, the critical question is, what entity made the final decisions regarding employment matters related to the [plaintiff]?" *Canelas v. A'Mangiare Inc.*, No. 13 CV 3630(VB), 2015 WL 2330476, at *6 (S.D.N.Y. May 14, 2015) (quotations and citations omitted). "'Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss.'" *Brown*, 756 F.3d at 226).

Under the ADA, a "joint employer relationship may be found to exist where there is sufficient evidence that the [defendant] had immediate control over the other company's

employees. Relevant factors include the commonality of hiring, firing, discipline, pay, insurance, records and supervision." *Eaton v. Goodstein Management, Inc.*, No. 97 CIV. 6582 TPG, 1999 WL 1037868 (S.D.N.Y. Nov. 15, 1999) (citing *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d. Cir. 1994)). The joint employer doctrine applies "when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (quotations and citations omitted).

Defendant argues that neither the single employer nor the joint employer doctrine apply. Defendants argue that BSSNY never had control or input over decisions to fire SSSX employees nor did they have any involvement in the decision making process for termination, or have a management role or financial control in SSSX at the time Plaintiff was terminated. (Def. Mot. 11.) Defendants further argue that the joint employer doctrine is inapplicable because Plaintiff does not allege facts supporting a finding that BSSNY and SSSX collectively employed 15 or more people, or that BSSNY knew of Plaintiff's disability and engaged in the alleged discriminatory action. (Def. Mot. 13.)

Defendant alternatively asks the Court to convert this part of the motion to one for summary judgment on the narrow issue of "whether Plaintiff's allegations of single and/or joint employer status are borne out by the facts." (Def. Mot. 6–7.) As a part of the instant Motion to Dismiss, Defendants offered the Declaration of Defendant Taddonio where he alleged, *inter alia*, that Defendant SSSX never had 15 employees or more. (ECF No. 19, ¶ 3.)

Plaintiff posits that the single employer doctrine applies because the Complaint alleges that SSSX's practice was sufficiently integrated with BSSNY under the single employer doctrine. (Mem. of Law in Supp. of Pl. Opp. to Def. Motion to Dismiss the Compl. ("Pl. Opp") 8, ECF No. 21.) Plaintiff further argues that BSSNY and SSSX shared employees, services,

records and equipment and that the Plaintiff received emails from BSSNY administrator Tompkins regarding X-Ray reimbursements. (*Id.* 8–9.) Plaintiff notes that she has insufficient information to assert factual allegations with respect to the joint employer doctrine at this juncture, and implies that discovery may provide evidence for this theory of liability. (*See* Pl. Opp. 11.)

This Court cannot grant Defendant's Motion to Dismiss because Plaintiff sufficiently alleges that the corporate Defendants have at least fifteen employees under the single employer doctrine. At this stage, Plaintiff "need only allege facts 'sufficient to put [the defendant] on notice of the theory of employer liability upon which her claims are based.'" *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 523 (S.D.N.Y. 2017) (citing *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp.2d 673, 681 (S.D.N.Y. 2009)). Plaintiff certainly does so here, as she alleges that the Defendant companies were interconnected and under common ownership, management and control such that they formed one integrated enterprise. *See Rizzo*, 2014 WL 12560779, at *1. Specifically, Plaintiff alleges that Defendants BSSNY and SSSX had 15 employees in aggregate after they merged. (AC ¶ 34.) The merger produced an overlap in medical operations and produced an "operationally interrelated and interdependent" relationship between the corporate Defendants. (AC ¶ 35; Pl. Opp. 8.) As a result of the merger, SSSX operated under BSSNY's Federal Tax ID number, SSSX's practice used BSSNY's office software program, all insurance payments and patient payments to SSSX were inputted by BSSNY employees, and BSSNY began providing the necessary "Explanation of Benefits" for SSSX's patients' review. (AC ¶¶ 36, 40.) Most relevant to the control of labor relations, Plaintiff asserts that BSSNY's office manager implemented personnel decisions that directly affected SSSX employees such as reducing the hours worked by several SSSX employees. (AC ¶ 43.) Plaintiff asserted that when

SSSX employees complained of a reduction in their hours to Defendant Taddonio, he told them that he would speak to someone at BSSNY about it. (AC ¶ 44.) Further, BSSNY and SSSX shared daily business decisions concerning the maintenance of patient files, treatment of patients, and finances such as account receivable. (AC ¶ 38.)

Although Plaintiff states, in conclusory fashion, that "[t]the two corporate defendants shared employees, services, records, and equipment" (AC ¶ 37), she does manage to provide factual allegations supporting the allegation. For example, BSSNY administrator Tompkins asked Plaintiff to send him information concerning X-Ray reimbursements so that "he could decide whether to buy a new digital x-ray machine, or continue to use the one in the SSSX office." (AC ¶ 41.) BSSNY's Business Manager, Lewis, not only met with Plaintiff to discuss the process for billing claims, insurance networks, and the roles of SSSX employees (AC ¶¶ 39–40), but also informed Plaintiff that SSSX would "immediately begin submitting office and surgical claims under the BSSNY Federal Tax ID number, and the information would be submitted by BSSNY employees." (AC ¶ 40.) Further, BSSNY and SSSX used the same medical equipment and employees for certain administrative tasks. (AC ¶ 45.)

Taken together, Plaintiff's allegations indicate that soon after the alleged merger, BSSNY and SSSX had interrelated operations, were functioning under common management, had common ownership, and that there was centralized control of labor relations. *Murray*, 74 F.3d at 404. The purported factual allegations, accepted as true, are adequate to lend plausibility to Plaintiff's assertion that the two entities functioned as an integrated unit.[4]

---

[4] Contrary to Defendant's contention, Plaintiff's allegations are sufficient to state a claim against BSSNY. "To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *see Rizzo*, 2014 WL 12560779, at *2.

a. Conversion to Motion for Summary Judgment

Although Plaintiff proffers sufficient factual allegations to state a claim upon which relief can be Granted, the Court converts this part of the motion to one for summary judgment on the narrow issue of whether or not the corporate Defendants have fifteen employees or more within the meaning of the ADA. *See Fernandez v. Windmill Distributing Co.*, 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016) (noting that a court may convert part of a 12(b)(6) motion into a Rule 56 motion for summary judgment); *Dias v. Community Action Project, Inc.*, No. 07–CV–5163 (NGG)(RER), 2009 WL 595601, at *7 (E.D.N.Y. March 6, 2009) (converting a motion to dismiss into one for summary judgment on the threshold fifteen-employee requirement in a Title VII case).

Conversion furthers the policies of Rule 12(b) and 56 "by directing a pretrial motion to the vehicle most appropriate for its resolution, ensuring that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular stage of the litigation." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). The Federal Rules of Civil Procedure 12(b) and 12(d) provide district courts two options when documents outside the pleadings are presented: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) (citing Fed. R. Civ. P. 12(b)); *SungChang Interfashion Co., Ltd.*

---

Plaintiff alleged sufficient facts to state a claim under the single employer doctrine. Under that doctrine, two entities will be regarded as a single employer subject to joint liability for employment-related actions. *Murray*, 74 F.3d at 404; *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 446 n.1 (S.D.N.Y. 2013).

*v. Stone Mountain Accessories, Inc.*, No. 12 Civ. 7280(ALC)(DCF), 2013 WL 5366373, at *4 (S.D.N.Y. Sept. 25, 2013); *see* Fed R. Civ. P. 12(d) (stating that if the Court converts a 12(b)(6) motion to one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); *see also Fernandez*, 159 F. Supp. 3d at 357.

The fifteen-employee question is one that may be dispositive in this case and, therefore, the most prudent approach is to allow the parties to partake in limited discovery to allow a full and fair opportunity to present materials pertinent to a Motion for Summary Judgment. *Dias*, 2009 WL 595601, at *7. Accordingly, the Court directs the parties to contact Magistrate Judge Davison to arrange a schedule for conducting discovery solely on the fifteen-employee question. Following discovery, the parties will be permitted to submit a motion for summary judgment on the narrow fifteen-employee issue.

### Failure to Accommodate

Defendants also move to dismiss Plaintiff's failure to accommodate claim arising under the ADA. For the following reasons, Defendant's motion to dismiss the failure to accommodate claim is denied.

"Discrimination in violation of the ADA includes, *inter alia*, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Products Mfg. Co.*, Inc., 583 F.3d 92, 96 (2d Cir. 2009) (citing 42 U.S.C. § 12112(b)(5)(A)). A reasonable accommodation may include "modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *Id.* at 97 (citing 42 U.S.C. § 12111(9)(B)). In determining if

an accommodation is "reasonable" the Court must evaluate "the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires an inquiry not only into the benefits of the accommodation but into its costs as well." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). Plaintiff need only suggest the existence of a plausible accommodation, "the costs of which, facially, do not clearly exceed its benefits." *Id.* "Once the plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Id.*

Defendant argues that Plaintiff's claim for failure to accommodate should be dismissed because Plaintiff never asked for an accommodation for her disability, nor did Defendants deny such an accommodation. (Def. Mot. 14–15.) Plaintiff posits that she did in fact ask for an accommodation when she told Defendant Taddonio that she would have to miss work for a colonoscopy and endoscopy, and that Defendants failed to accommodate her disability by firing her several days after returning from work. (Pl. Opp. 11; AC ¶ 79.)

Defendant's motion to dismiss the failure to accommodate claim is denied. Plaintiff's allegation that she requested time off for a colonoscopy and endoscopy is a plausibly reasonable accommodation under the ADA. 42 U.S.C. § 12111(9)(B) (noting that a reasonable accommodation may include "modified work schedules"). Defendants argue, however, that they never denied this request and that Plaintiff does not allege any facts to that effect. In so arguing, Defendants ignore that they need not engage in an overt or direct act to deny an accommodation. For example, a Defendant's disregard of a request for an accommodation can constitute a denial of the same. *See Pahuja v. American University of Antigua*, No. 11 Civ. 4607(PAE), 2012 WL 6592116, at *11 (S.D.N.Y. Dec. 18, 2012) (finding that allegations that Defendants ignored

requests for an accommodation was sufficient to plead denial of an accommodation). Terminating an employee soon after a request for an accommodation could certainly amount to a denial of that request. Finding otherwise would allow employers to circumvent their responsibilities under the ADA by simply terminating employees who make requests for accommodations.

Consequently, Defendant's motion to dismiss the failure to accommodate claim must be denied because Plaintiff requested a plausibly reasonable accommodation, and Defendant's termination plausibly amounts to a denial of Plaintiff's request.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED in part, and partially converted to a Motion for Summary Judgment. The parties are ordered to contact Magistrate Judge Davison within three days of this Opinion to arrange a schedule for conducting discovery on the fifteen-employee question. At the conclusion of discovery, the moving party shall inform this Court that discovery has been completed and request a briefing schedule for the one-issue Motion for Summary Judgment.

Finally, the Clerk of the Court is respectfully requested to terminate the motion at Docket Number 16.

Dated: April 16, 2018　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

14